COMMONWEALTH *vs.* ROBERT L. FORDE.[1]

Suffolk.   November 12, 1973. — July 8, 1974.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Search and Seizure.*

Where police had had an ample opportunity to obtain a search warrant to search an apartment for narcotics, a warrantless entry and search of the apartment was not justified by the exigency of preventing destruction of the narcotics, which became apparent to them a few minutes before the entry but which they should have anticipated much earlier, or on the contended ground that the police, with probable cause to believe that a felony had been or was being committed in the apartment, could have entered it without an arrest warrant to make arrests therein and that the arrests would have justified the seizure of contraband. [426-433]

---

[1] After entry of this appeal, William A. Lee, a defendant in four companion cases arising out of the events narrated herein, filed a motion for leave to withdraw his appeal, accompanied by an affidavit stating his reasons therefor. The motion was allowed by a single justice of this court prior to oral argument.

INDICTMENTS found and returned in the Superior Court on February 9, 1971.

Pre-trial motions to suppress were heard by *Spring, J.*

The cases were tried before *Goldberg, J.*

*Kevin M. Keating* for the defendant.

*Robert Snider,* Special Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J.  The defendant was indicted for possession, and possession with intent to sell, of marihuana and LSD, and was convicted by a jury as charged.  The principal issue raised by the defendant on this appeal under G. L. c. 278, §§ 33A-33G, is the denial of his pre-trial motion to suppress evidence[2] which was the product of a warrantless entry into and search of his apartment by the police.

At the hearing on the motion to suppress, there was evidence tending to establish the following facts.  A building at 467 Commonwealth Avenue in Boston in which the defendant's apartment was located had been under police surveillance for approximately six months prior to the night of January 27, 1971.  In late December, 1970, Officer William Fennell received a tip from an anonymous informant, who had previously proved reliable, but who did not disclose the basis of his information, that a suspected drug dealer, identified in a subsequent conversation as one Donald McDonald, was purchasing drugs from persons residing at 467 Commonwealth Avenue.  The informant suggested that it would not be advisable to conduct a raid on the premises at that time as a new shipment of drugs was expected shortly. This information was communicated to Officer Henry Rinaldi, who was in charge of the investigation.  Around January 1, 1971, Rinaldi had the first of several conversations with another anonymous informant, who had also proved reliable in the past, concerning the basement apartment at the same address.  McDonald was also

---

[2] The judge denied the motion without making any findings of fact.

known to this informant.   Approximately one week
before the night of January 27, Rinaldi's informant told
Rinaldi that he had been in the defendant's apartment a
few days earlier, that he had seen pounds of marihuana
there and had witnessed a sale of marihuana to a person
who had accompanied him to the apartment.   Rinaldi
testified that in the intervening week he intended to
obtain a search warrant but failed to do so.   No affi-
davit in support of a warrant was prepared.

At 7:00 p.m. on January 27, 1971, Fennell told Rinaldi
that he had just received information from his informant
to the effect that McDonald was going to purchase mari-
huana that evening in the building in question.   The
informant provided a precise description of the car in
which McDonald would be riding, including its license
plate number.   Rinaldi and Officer Edward Clark
arrived at the defendant's building around 7:50 p.m.
Around 8:15 p.m. the officers observed a car stop outside
467 Commonwealth Avenue;   it conformed to the
informant's description in every respect.   A tall man,
known by Clark to be McDonald left the car, entered the
building, came out after a few minutes with a shopping
bag in his hand, and rejoined the other three people in
the car.   When the car drove away, the officers followed
it for several minutes, then stopped it, arrested the occu-
pants and found marihuana in the shopping bag.   The
arrested persons and their car were taken to the police
station.   The time was then 8:30 p.m.

At 11:30 p.m. Rinaldi called an assistant district
attorney to inquire whether it would be necessary to
obtain a warrant to search the defendant's apartment.
During this telephone conversation one of the other
officers approached Rinaldi and told him that he had just
overheard McDonald tell two of his companions who
were soon to be admitted to bail that "they better get
right down to the place and tell them what . . . hap-
pened because I can't get bailed."   Rinaldi testified from
memory (it was not part of his police report) that he then

attempted to contact two assistant clerks of the Roxbury District Court to obtain a search warrant but was unable to reach either of them. No effort had been made or was then made to contact any justice of the Roxbury District Court or any other court.

At 11:45 P.M. eight officers went to 467 Commonwealth Avenue. Several were dispatched to the front and rear of the building. Rinaldi stood outside the door of the defendant's apartment with other officers while another officer rang the bell. When the door opened the officers immediately arrested three persons standing close to the door, then arrested three other persons in the living room, and then fanned out through the apartment as one of the prisoners fled toward a back bedroom. Three other persons, including the defendant, were arrested in the kitchen. There were a warm pipe and bags of green herbs, later identified as marihuana, in plain view in the living room. Five glassine bags containing a white powder substance, later identified as LSD, were seen in an open bureau drawer in the boiler room in back of the apartment. The persons arrested were taken to the police station.

Rinaldi successfully called one of the assistant clerks of the Roxbury District Court at 1:00 A.M. and arranged to meet him in one-half hour to obtain a search warrant. Rinaldi returned to the apartment shortly after 2:00 A.M. and conducted a thorough search of the apartment, itemizing separately on the return part of the warrant those items seen in plain view during the initial raid and those items subsequently discovered in the search pursuant to the warrant. Rinaldi conceded that the affidavit for the search warrant was predicated upon the information acquired during the initial entry, and that affidavit itself shows that it was predicated solely upon such information.

" [T]he police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure . . .." *Terry* v. *Ohio,*

392 U. S. 1, 20 (1968). *Chimel* v. *California*, 395 U. S. 752, 762 (1969). The necessity for compliance with the warrant procedure is "subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States*, 389 U. S. 347, 357 (1967). *Coolidge* v. *New Hampshire*, 403 U. S. 443, 454-455 (1971). See also *Commonwealth* v. *Cohen*, 359 Mass. 140, 143 (1971). Such exceptional or exigent circumstances include police response to an emergency, hot pursuit of a fleeing felon, and the imminent destruction of evidence or its threatened removal from the jurisdiction. *Vale* v. *Louisiana*, 399 U. S. 30, 35 (1970), and cases cited. They include searches of persons incident to lawful arrests (*Beck* v. *Ohio*, 379 U. S. 89, 91 [1964]; *Chimel* v. *California*, 395 U. S. 752 [1969]), seizures of evidence of crime in plain view (*Coolidge* v. *New Hampshire*, 403 U. S. 443, 465 [1971]), and searches of automobiles on public ways in a variety of circumstances. *Carroll* v. *United States*, 267 U. S. 132, 153 (1925). *Chambers* v. *Maroney*, 399 U. S. 42, 47-48 (1970).

The Commonwealth contends that this case fits into one of these categories of exigency, namely the imminent destruction of evidence. It argues that when Rinaldi was told at 11:30 P.M. that two of the persons arrested with McDonald at 8:30 that evening were about to be bailed and, heeding McDonald's admonition, were likely to warn those at 467 Commonwealth Avenue of what had occurred, an imperative need for immediate police action was created to prevent the destruction of the drugs at the apartment. In short, the Commonwealth argues that, under the circumstances, there was simply no time to secure a warrant.

Although the ease with which narcotic drugs can be destroyed or distributed has frequently furnished one of the bases for permitting a warrantless search (*Ker* v. *California*, 374 U. S. 23, 42 [1963]; *United States* v. *Davis*, 461 F. 2d 1026, 1030-1031 [3d Cir. 1972]; *United States* v. *Rubin*, 474 F. 2d 262, 269-270 [3d Cir. 1973];

*United States* v. *Mapp,* 476 F. 2d 67, 74 [2d Cir. 1973];
*Commonwealth* v. *Cohen, supra,* at 145), in narcotics
cases as in any other case (see, e.g., *Johnson* v. *United
States,* 333 U. S. 10 [1948]) "those who seek exemption
from the constitutional mandate [must show] that the
exigencies of the situation made that course imperative."
*McDonald* v. *United States,* 335 U. S. 451, 456 (1948).
We are unable in this case to find a convincing justifica-
tion that that course was imperative.  The police had
had the building under surveillance for six months.  One
week before the raid, Rinaldi's informant's tip, which
met the requirements of *Aguilar* v. *Texas,* 378 U. S. 108,
110-115 (1964), and *Spinelli* v. *United States,* 393 U. S.
410, 416-419 (1969), had furnished the police with
probable cause to search the defendant's apartment.
The police, for what reason does not appear in the
record, made no attempt to obtain a warrant.  On the
evening of January 27, 1971, at 7:00 P.M., and certainly
after the arrest of McDonald and his confederates at 8:30
P.M., it is reasonable to believe that the police expected to
enter and search the apartment.  It was clearly foresee-
able that one or more of those persons arrested at 8:30
P.M. would be admitted to bail that night and would
thus be free to warn those at the apartment.  More-
over, Rinaldi testified that he had decided to release one
of those arrested — McDonald's fifteen year old sister —
to her parents that evening.  Despite this knowledge the
police made no attempt to secure a search warrant
between 8:30 P.M. and 11:30 P.M.  Nor is there testimony
that it would have been impossible or even difficult for
the police to obtain a warrant at that time of night.
Contrast *Dorman* v. *United States,* 435 F. 2d 385,
394-396 (D. C. Cir. 1970).  An inference to that effect
tends to be refuted by their success in securing a search
warrant at 1:30 the next morning.

Having forgone the opportunity to obtain a warrant,
the police may not rely on the exigency which became
apparent to them at 11:30 P.M., and which they should

have anticipated would arise sooner or later. "Proceeding without a warrant is not to be justified, as the . . . [Commonwealth] suggests here, by the fact that by the time the officers act, dispatch is necessary to avoid flight or injury to person or property. Haste does not become necessary in the present sense if the need for it has been brought about by deliberate or unreasonable delay. This would allow the exception to swallow the principle." *Niro* v. *United States,* 388 F. 2d 535, 540 (1st Cir. 1968).

*Commonwealth* v. *Cohen,* 359 Mass. 140 (1971), cited by the Commonwealth, is not in point. There, the police had gone to an apartment building to "quell a disturbance, not to conduct a previously planned raid." 359 Mass. at 145. The court distinguished the *McDonald* case on the basis of that fact. However, here, as in the *McDonald* case, the police went to the premises to conduct a raid. There were no other reasons for their presence. Nor is *Commonwealth* v. *Andrews,* 358 Mass. 721 (1971), relied upon by the Commonwealth, in point. That case presents a clear example of exigent circumstances, namely, a warrantless entry into an apartment which resulted from a report that an armed man was threatening to shoot everybody in the building. This is precisely the "cry for help" envisioned in the *McDonald* case (335 U.S. at 454). No such emergency existed here.

Alternatively, the Commonwealth argues that the purpose of the entry was to arrest the persons in the apartment and that no warrant was necessary because the police had probable cause to believe that a felony had been or was being committed in the apartment. The issue "whether the forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, under circumstances where no reason appears why an arrest warrant could not have been sought, is consistent with the Fourth Amendment" has been left open by the United States Supreme Court. *Jones* v. *United States,*

357 U. S. 493, 499-500 (1958). *Coolidge* v. *New Hampshire*, 403 U. S. 443, 477-482, 492, 511-512 (1971). *Johnson* v. *Louisiana*, 406 U. S. 356, 365 (1972). So far as precedents in this Commonwealth are concerned it is clear that an arrest warrant is not required in such a situation. *Commonwealth* v. *Phelps*, 209 Mass. 396, 407-408 (1911). *Commonwealth* v. *Andrews*, 358 Mass. 721, 724 (1971). But this line of authority cannot be stretched to allow police to conduct a raid without a search warrant when they had ample opportunity to secure such a warrant. The same argument that the Commonwealth makes here, namely, that probable cause justified the entry and ensuing arrests, and that the arrests justified the seizure of contraband, was explicitly raised and explicitly rejected both in *Trupiano* v. *United States*, 334 U. S. 699, 704-705 (1948), which has been questioned[3], and in the *McDonald* case at 454, which has not. *Commonwealth* v. *Cohen*, 359 Mass. 140, 143 (1971). "We think it proper to say that while the failure to obtain a warrant when one could readily have been had is not of necessity fatal to a search or seizure concomitant with an arrest the nature of which had been fully anticipated, it will be fatal unless there are at least some countervailing factors." *Niro* v. *United States*, 388 F. 2d 535, 539 (1st Cir. 1968). As the police in this case had probable cause to believe that a felony was being committed in the apartment, they entered the premises legally for the purpose of arresting those engaged in committing the felony. *Commonwealth* v. *Andrews*, *supra*. But as the police had had ample opportunity to secure a warrant to search the premises and seize

---

[3] The *Trupiano* case was overruled by *United States* v. *Rabinowitz*, 339 U. S. 56 (1950), which was in turn overruled by *Chimel* v. *California*, 395 U. S. 752 (1969). The opinion of Justice Stewart, writing for a plurality of the court in *Coolidge* v. *New Hampshire*, 403 U. S. 443, 476-478, 482 (1971), indicates that certain aspects of the *Trupiano* decision, including those most relevant to the case before us, retain their vitality.

evidence and contraband therein, they may not now rely on the arrests to justify their failure to secure a warrant. *McDonald* v. *United States, supra,* at 454.

There is no merit to the contention that the items seized were admissible because they were not actually taken from the apartment until after a search warrant had been obtained. The information obtained during the initial entry provided the sole basis for the affidavit in support of the search warrant. The evidence was therefore the product of the first, warrantless entry and as such is inadmissible. *Wong Sun* v. *United States,* 371 U. S. 471, 484-488 (1963).

In view of our decision on this point it is unnecessary to consider the assignments of error relating to evidentiary points and to certain requests for jury instructions.

*Judgments reversed.*
*Verdicts set aside.*