## COMMONWEALTH vs. ROBERT L. FORDE.

Suffolk. January 7, 1975. — May 22, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Search and Seizure. Constitutional Law,* Search and seizure.

Although it appeared in a criminal narcotics case that necessity of preventing destruction or removal of narcotics in an apartment, considered alone, might have constituted an exigency justifying a warrantless search of the apartment by police, such exigency could not justify the search where it further appeared that the exigency could have been foreseen by the police for some three hours in an evening and no excuse for failure of the police to obtain a search warrant during that time appeared [799-803]; nor was seizure of narcotics in plain view in the apartment when the police, without a warrant, entered it and arrested persons there proper as an incident of the arrests where the entry and the arrests in the circumstances were illegal [803-807]; nor were narcotics seized in the apartment pursuant to a warrant finally obtained later that night legally seized where the warrant was issued wholly on the basis of information acquired through the initial illegal entry [807]; and under the Fourth Amendment to the Federal Constitution it was error to deny motions to suppress the evidence so seized, and convictions must be reversed [807-808]. HENNESSEY, J., concurring; QUIRICO, J., dissenting.

INDICTMENTS found and returned in the Superior Court on February 9, 1971.

Pre-trial motions to suppress evidence were heard by *Spring,* J., and the cases were tried before *Goldberg,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kevin M. Keating* & *Charlotte Anne Perretta,* for the defendant, submitted a brief.

*Robert Snider,* Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendant was convicted in the Superior Court of possession of marihuana and LSD, and possession with intent to sell the same. He appealed under G. L. c. 278, §§ 33A-33G, and the Appeals Court reversed the judgments below. *Commonwealth* v. *Forde,* 2 Mass. App. Ct. 425 (1974). The Commonwealth applied for and was granted further appellate review pursuant to G. L. c. 211A, § 11. The opinion of the Appeals Court contains a full statement of the facts and we repeat here only those critical to our decision.

The warrantless entry into the defendant's apartment, which had been under police surveillance for some six months prior thereto, occurred about 11:45 P.M. on January 27, 1971. Earlier that month Sergeant Henry J. Rinaldi (Rinaldi) of the Boston police had been in receipt of information from a reliable informant relative to drug sales made by persons resident in the apartment. Approximately a week before January 27, 1971, the informant described having been in the apartment a few days earlier where he witnessed a sale of marihuana to a third person. Rinaldi testified that he had planned to obtain a search warrant in the week that followed but had not done so. At 7 P.M. on January 27, Rinaldi learned that one Donald McDonald would be arriving at the apartment that evening to purchase marihuana. Rinaldi and another officer "staked out" the building and observed McDonald entering the apartment and leaving with a shopping bag. They followed McDonald's car for several blocks and arrested McDonald and the three other occupants of the car. Marihuana was found in the shopping bag. The four persons arrested were taken to police headquarters.

Based on the testimony of the police, the only activities which occurred between 8:30 P.M., the time of the arrest, and 11:30 P.M., were booking, photographing, and fingerprinting three of the four arrested persons, as well as calling the parents of the fourth, a juvenile, so that she might be released to them that evening. At

11:30 P.M. Rinaldi called an assistant district attorney to inquire whether he could search the defendant's apartment without a warrant. The answer was in the negative. While he was still on the telephone, another officer came to Rinaldi to inform him that he had just overheard McDonald telling two of his companions who were about to be admitted to bail that "they better get right down to the place and tell them what has happened because, 'I can't get bailed.'" Rinaldi then attempted to telephone two assistant clerks of the Municipal Court of the Roxbury District in order to procure a warrant. At 11:45 P.M., having failed to reach either of these clerks, he and seven other police officers proceeded to the defendant's apartment, rang the doorbell, and immediately arrested all of the occupants, fanning out through the apartment in the process. Those arrested were taken to police headquarters. About 1 A.M. Rinaldi finally reached one of the assistant clerks to obtain a search warrant issued entirely on the evidence in plain view at the time of the initial entry. Shortly after 2 A.M. a thorough search of the apartment was conducted.

In justification of the initial warrantless entry, the Commonwealth first argues that the cases fall within the exception to the warrant requirement in that the officers were faced with exigent circumstances. The Appeals Court rejected this contention, 2 Mass. App. Ct. 425, 429-430 (1974), and we are of the same opinion. When searches are conducted without a warrant, the burden is on the government "to show that a particular search falls within a narrow class of permissible exceptions." *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974). *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 279 (1974). *Commonwealth* v. *Hall,* 366 Mass. 790, 801-802 (1975). *Vale* v. *Louisiana,* 399 U. S. 30, 34 (1970). Under the exception for exigent circumstances, there must be a showing that it was impracticable for the police to obtain a warrant, and the standards as to exigency are strict. *McDonald* v. *United States,* 335 U. S. 451,

454-456 (1948). *Vale* v. *Louisiana, supra,* at 35. *Commonwealth* v. *Hall, supra.*

The exigency here is said to spring from the statement of McDonald to his companions about to be released that the occupants of the defendant's apartment must be warned. Presumably such a warning would result in the destruction or removal of the drugs. The police had every reason to believe that there were persons in the apartment at that time who could respond to such a warning, so the concern of the police was genuine. Cf. *Commonwealth* v. *Hall, supra,* at 802; *Vale* v. *Louisiana, supra,* at 34; *United States* v. *Basurto,* 497 F. 2d 781, 789 (9th Cir. 1974). Considered alone, the conversation which was overheard could be said to supply exigent circumstances obviating the necessity of a warrant in that the delay in obtaining it would substantially increase the risk of loss or destruction of evidence. *Commonwealth* v. *Hall, supra,* at 803-804. *United States* v. *Rubin,* 474 F. 2d 262, 269 (3d Cir. 1973), cert. den. sub nom. *Agran* v. *United States,* 414 U. S. 833 (1973). *United States* v. *Evans,* 481 F. 2d 990, 992 (9th Cir. 1973).

However, the claim of exigency cannot be evaluated without considering the circumstances in their totality. Here the police had been watching the apartment with an eye to drug traffic for some time, and as of at least a week before the raid the police had information sufficient to establish probable cause. See *Commonwealth* v. *Stevens,* 362 Mass. 24, 26-28 (1972). The police had planned to get a search warrant during that week but had not done so. On the night of January 27, 1971, after McDonald and his companions were arrested, three hours had elapsed before the police overheard McDonald urging that the occupants of the apartment be warned. During those hours the police undoubtedly could have foreseen the serious risk that one of those arrested would be released that evening and would attempt to warn the defendant and others. See *United States* v. *Mapp,* 476

F. 2d 67, 74 (2d Cir. 1973); *United States* v. *Evans,*
*supra,* at 994. Rinaldi in fact testified that he had called
the parents of the arrested female juvenile and announced
his intention to release her to them that evening. In
these circumstances the failure of the Commonwealth to
offer any explanation why no effort was made to obtain a
warrant in the three hours prior to the McDonald
conversation which was overheard is fatal to its claim of
exigency. "Haste does not become necessary in the
present sense if the need for it has been brought about by
deliberate and unreasonable delay. This would allow the
exception to swallow the principle." *Niro* v. *United*
*States,* 388 F. 2d 535, 540 (1st Cir. 1968). *United States*
v. *Curran,* 498 F. 2d 30, 34 (9th Cir. 1974). *United*
*States* v. *Rosselli,* 506 F. 2d 627, 630-631 (7th Cir. 1974).
See *United States* v. *Rubin,* 474 F. 2d 262, 270 (3d Cir.
1973), cert. den. sub nom. *Agran* v. *United States,* 414
U. S. 833 (1973). Cf. *Commonwealth* v. *Duran,* 363
Mass. 229, 231-232 (1973). We do not intimate that the
emergency which developed at 11:30 P.M. was contrived
by the police but since as an emergency it was easily
foreseeable, and since the police had three hours in which
they might have secured a warrant and thereby avoided
the need to rely on the emergency justification, see
*United States* v. *Rosselli, supra,* the police must offer
some acceptable explanation for their failure to act in
that time. We hasten to add that our decision does not
imply that police must be required to conduct a search as
soon as probable cause arises. See *Cardwell* v. *Lewis,*
417 U. S. 583, 595-596 (1974). Nor must a warrant be
obtained at that stage of the investigation, for the
warrant would then have to be executed within seven
days at most. G. L. c. 276, § 2A. *Commonwealth* v.
*Cromer,* 365 Mass. 519, 525-526 (1974). Furthermore,
where the police are conducting an investigation of
continuing criminal activities, the exigency of circum-
stances which develop unexpectedly is not diminished by
the fact that in hindsight it appears that there would

have been time to obtain a warrant. *United States* v. *Titus*, 445 F. 2d 577, 578-579 (2d Cir. 1971), cert. den. 404 U. S. 957 (1971). *United States* v. *Miller*, 460 F. 2d 582, 586 (10th Cir. 1972). *United States* v. *Davis*, 461 F. 2d 1026, 1031 (3d Cir. 1972). We hold here only that where the exigency is reasonably foreseeable and the police offer no justifiable excuse for their prior delay in obtaining a warrant, the exigency exception to the warrant requirement is not open to them.

The Commonwealth argues alternatively that the entry into the defendant's apartment was for the purpose of making arrests and that no "search" in the terms of the Fourth Amendment to the United States Constitution occurred until after a warrant was finally obtained, for the only items "seized" initially were those in plain view. The Appeals Court concluded that there was probable cause to make the arrests, and that under the Commonwealth precedents a warrant was not required for an arrest even though it entailed an entry into a dwelling and even though the police may have had time to obtain a warrant. However, the Appeals Court also concluded that while the arrests were valid, a search incident to the arrest could not be justified where there were no exigent circumstances excusing the lack of a search warrant. 2 Mass. App. Ct. 425, 432 (1974).

As to the latter conclusion, we are not in agreement. The only evidence "seized" prior to obtaining the search warrant was that which was in plain view to the police in the course of making the arrests. Its discovery did not constitute a "search" within the meaning of the Fourth Amendment. *Commonwealth* v. *Haefeli*, 361 Mass. 271, 280 (1972). *Ker* v. *California*, 374 U. S. 23, 43 (1963). The requirement of "inadvertent" discovery imposed by *Coolidge* v. *New Hampshire*, 403 U. S. 443, 469-471 (1971), which was designed to prevent general warrantless searches when the police know what they are looking for and have time to seek a warrant, does not apply to items in plain view within the scope of a limited search

incident to arrest as permitted by *Chimel* v. *California,* 395 U. S. 752 (1969). See *Coolidge* v. *New Hampshire, supra,* at 465, n. 24, 482. It does not appear that the limits of *Chimel* were transgressed. Therefore, if the arrests were valid the items in plain view could be seized, and observations made by the police while making the arrests could provide the basis for the subsequent issuance of a search warrant.

We are thus led to turn to the validity of the arrests. The traditional common law rule in Massachusetts as to entry of a dwelling to make an arrest was that stated by the court in *Commonwealth* v. *Phelps,* 209 Mass. 396, 407-408 (1911): "An officer who has the right to arrest without a warrant because he suspects on reasonable grounds that the defendant has committed a felony, has a right to break open doors." More recently, in *Commonwealth* v. *Andrews,* 358 Mass. 721, 723-725 (1971), we upheld the validity of a warrantless entry into the defendant's apartment to arrest the defendant who had been brandishing a gun and threatening to kill everyone in the building. But the issue whether a warrantless entry into a dwelling must be justified by exigent circumstances was not present in that case, for it presented a classic example of the type of emergency which always excuses the failure to obtain a warrant. See *Warden, Md. Penitentiary* v. *Hayden,* 387 U. S. 294, 298-299 (1967).

Soon after this court's decision in the *Andrews* case, the United States Supreme Court discussed the issue of warrantless entries to make arrests in *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971). The court found it unnecessary to decide the question,[1] but in dicta the plurality opinion stated: "It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is *per se*

---

[1] The question remains unanswered by the Supreme Court. See *Johnson* v. *Louisiana,* 406 U. S. 356, 365 (1972); *Gerstein* v. *Pugh,* 420 U. S. 103, 113, n. 13 (1975).

Commonwealth v. Forde.

legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without warrant are *per se* unreasonable in the absence of some one of a number of well defined 'exigent circumstances.'" *Id.* at 477-478. The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment was designed to circumscribe by the general requirement of a judicial determination of probable cause. *Agnello v. United States,* 269 U. S. 20, 32-33 (1925). *Johnson v. United States,* 333 U. S. 10, 14 (1948). *Wolf v. Colorado,* 338 U. S. 25, 27-28 (1949). *United States v. United States Dist. Court for the E. Dist. of Mich.* 407 U. S. 297, 313 (1972). *Dorman v. United States,* 435 F. 2d 385, 389-390 (D. C. Cir. 1970). LaFave, Warrantless Searches and the Supreme Court: Further Ventures into the "Quagmire," 8 Crim. Law Bull. 9, 28 (1972). Note, 23 Stanford L. Rev. 995, 997-999 (1971). The distinction between an entry to search and an entry to arrest is slight, for the latter may well be characterized as simply a search for a person rather than a search for things. See *Warden, Md. Penitentiary v. Hayden, supra;*[2] *Morrison v. United States,* 262 F. 2d 449, 452 (D. C. Cir. 1958). Moreover, it can be argued that an entry to arrest is a far greater intrusion than an entry to search. *Coolidge v. New Hampshire, supra,* at 479-480. The exigencies which would excuse the lack of an arrest warrant may

---

[2] The *Hayden* case not only treated an entry to arrest as a search of the dwelling for a person but also excused the lack of a warrant on the ground that exigent circumstances were present. As the plurality opinion in *Coolidge v. New Hampshire, supra,* at 480-481, stated: "The case of *Warden v. Hayden* . . ., where the Court elaborated a 'hot pursuit' justification for the police entry into the defendant's house without a warrant for his arrest, certainly stands by negative implication for the proposition that an arrest warrant is required in the absence of exigent circumstances."

differ from those supplying the excuse for the lack of a search warrant. In any event, the police are required to demonstrate that exigency. In short, we believe that the Fourth Amendment prohibits a warrantless entry into a dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant.[3]  While this conclusion departs from the old law of the Commonwealth, the same result has been reached by nearly every court to address the issue in recent years. *Dorman* v. *United States*, 435 F. 2d 385, 388-391 (D. C. Cir. 1970). *Vance* v. *North Carolina*, 432 F. 2d 984, 990-991 (4th Cir. 1970). *United States* v. *Shye*, 492 F. 2d 886, 891 (6th Cir. 1974). *United States* v. *Phillips*, 497 F. 2d 1131, 1135 (9th Cir. 1974). *Salvador* v. *United States*, 505 F. 2d 1348, 1351-1352 (8th Cir. 1974). *United States* v. *Weinberg*, 345 F. Supp. 824, 837-838 (E. D. Pa. 1972), affd. in part 478 F. 2d 1351 (1973), cert. den. 414 U. S. 1005 (1973). *United States* v. *Rodriguez*, 375 F. Supp. 589, 593 (S. D. Tex. 1974), affd. 497 F. 2d 172 (5th Cir. 1974). *Huotari* v. *Vanderport*, 380 F. Supp. 645, 649-651 (D. Minn. 1974). *People* v. *Moreno*, 176 Colo. 488, 497 (1971). See *Wheeler* v. *Goodman*, 330 F. Supp. 1356, 1371 (W. D. N. C. 1971) (holding not limited to arrests in dwellings); *Stuck* v. *State*, 255 Ind. 350, 356-358 (1970) (arrest warrant must be secured whenever practicable); *Nilson* v. *State*, 272 Md. 179, 185-191 (1974) (assuming exigent circumstances are a constitutional prerequisite to warrantless entry to arrest, such circumstances were present). Contra, *United States ex rel. Falconer* v. *Pate*, 319 F. Supp. 206, 212 (N. D. Ill. 1970), affd. without opinion, 478 F. 2d 1405 (7th

---

[3] Our holding does not imply that warrantless arrests in general must be justified by exigent circumstances excusing the lack of a warrant but, rather, is limited to warrantless entries of dwellings for the purpose of making arrests within those dwellings. See *Gerstein* v. *Pugh*, 420 U. S. 103, 113, n. 13 (1975). Cf. *United States* v. *Watson*, 504 F. 2d 849 (9th Cir. 1974), cert. granted 420 U. S. 924 (1975) (invalidating warrantless arrest in a public place).

Cir. 1973), cert. den. 414 U. S. 1094 (1973); *State* v. *Perez,* 277 So. 2d 778, 782-783 (Fla. 1973), cert. den. 414 U. S. 1064 (1973).

It is our view that there were no exigent circumstances here excusing the lack of an arrest warrant. Factors which would have tended to support a finding of exigency include a showing that the crime was one of violence or that the suspect was armed, a clear demonstration of probable cause, strong reason to believe that the suspect was in the dwelling, and a likelihood that the suspect would escape if not apprehended. Additional considerations testing the reasonableness of police conduct are whether the entry is peaceable and whether the entry is in the nighttime. *Dorman* v. *United States,* 435 F. 2d 385, 392-393 (D. C. Cir. 1970). The police action with which we are here concerned finds little support in these factors. It is impossible to find one's way around the delay of three hours in seeking the warrants. In the face of this delay the possible warning of the defendant which most likely would have been directed toward the destruction of evidence rather than his escape does not achieve the level of an exigency.

Since the warrantless arrests in the defendant's apartment were invalid, the police had no legal justification for being present in the apartment and cannot rely on the "plain view" doctrine for a warrantless seizure of contraband. *Coolidge* v. *New Hampshire,* 403 U. S. 443, 466 (1971). *Commonwealth* v. *Haefeli,* 361 Mass. 271, 281-282 (1972). As to the search warrant obtained after the entry into the apartment, it is apparent that the affidavit in support of the warrant is based solely on information acquired during that initial illegal entry. Consequently, evidence seized pursuant to the warrant should have been suppressed. *Wong Sun* v. *United States,* 371 U. S. 471, 484-488 (1963). *Commonwealth* v. *Penta,* 361 Mass. 894, 895 (1972). *Common-*

*wealth* v. *Hall,* 361 Mass. 790, 795 (1975). It follows that the judgments of the Superior Court must be reversed.

*So ordered.*

HENNESSEY, J. (concurring). While I concur in the result reached in the majority opinion, *viz.,* that evidence seized pursuant to the warrant issued in these cases should be suppressed since the affidavit in support of the warrant is based on information illegally obtained, I am not in agreement with the reasoning by which the majority reach this result. I think that the opinion of the Appeals Court was correct in holding that even if the arrests were valid the search at issue in these cases was not. Thus I differ with the reasoning of the majority opinion at the point where it differs from the reasoning of the Appeals Court opinion.

For the sake of clear thinking in similar future cases, I believe that these cases are best approached from an analysis of the plain view doctrine and the requirement of inadvertence as a condition of the application of that doctrine. See *Trupiano* v. *United States,* 334 U. S. 699, 704-708 (1948), overruled by *United States* v. *Rabinowitz,* 339 U. S. 56 (1950), which in turn was overruled by *Chimel* v. *California,* 395 U. S. 752 (1969). See also *Coolidge* v. *New Hampshire,* 403 U. S. 443, 476-482 (1971), indicating that the plain view aspects of the *Trupiano* case still have validity. As to the arrests, see *Gerstein* v. *Pugh,* 420 U. S. 103, 113, n. 13 (1975).

As stated in the *Coolidge* plurality opinion, the limitations on application of the plain view doctrine are that "plain view *alone* is never enough to justify the warrantless seizure of evidence. . . . The second limitation is that the discovery of evidence in plain view must be inadvertent." 403 U. S. at 468-469 (1971).

In my opinion, a case of inadvertence is not made out where the police in anticipation of, *and with probable cause to know of,* the presence of incriminating evidence

wait for the person to be arrested to enter a dwelling house in order that they may place themselves in a position to gain a plain view of the evidence. On that reasoning I would suppress the evidence seized pursuant to the warrant issued in these cases.

The majority are, I think, drawn to the necessity of finding these *arrests* illegal by their thesis that "[t]he requirement of 'inadvertent' discovery imposed by *Coolidge* v. *New Hampshire,* 403 U. S. 443, 469-471 (1971) . . . does not apply to items in plain view within the scope of a limited search incident to arrest as permitted by *Chimel* v. *California,* 395 U. S. 752 (1969)." This is a correct statement of law since the justification of a warrantless search *within* the *Chimel* limits lies in the exigency created by a valid arrest on probable cause. The plain view doctrine, where applicable, serves to extend the privileges of the police beyond the *Chimel* limits. However, in that situation, *beyond* the *Chimel* limits, inadvertence is required. "Where, however, the arresting officer *inadvertently* comes within plain view of a piece of evidence, not concealed, *although outside of the area under the immediate control of the arrestee,* the officer may seize it, so long as the plain view was obtained in the course of an appropriately limited search of the arrestee" (emphasis supplied). *Coolidge* v. *New Hampshire, supra,* at 466 (n. 24) (1971). In these cases it has not been shown that the evidence seized in plain view was *within* the area under the immediate control of the persons arrested. Indeed the facts developed at the hearing on the motions to suppress are ambiguous in this regard and may be read to support the contrary inference, *viz.,* that the drugs were not within the scope of a *Chimel* search. Cf. *Commonwealth* v. *Antobenedetto,* 366 Mass. 51 (1974). In this failure of the majority to deal with the facts as they are lies the nub of my disagreement with the majority's reasoning.

The result is that the majority unnecessarily declare the arrests (although based on probable cause) to be invalid

instead of limiting their holdings to the conclusion, as the Appeals Court did and I would, that the search, and not necessarily the arrests, was invalid.

Admittedly, whether we strike down the arrests or declare the plain view principle inapplicable, the result is the same. Nevertheless, by following the route of the majority opinion we unnecessarily overrule prior decisions of this court. See *Commonwealth* v. *Phelps*, 209 Mass. 396 (1911); *Commonwealth* v. *Andrews*, 358 Mass. 721 (1971). The United States Supreme Court has yet to rule that a warrantless arrest on probable cause within a dwelling is invalid because it would have been practical to obtain a warrant. See *Jones* v. *United States*, 357 U. S. 493, 499-500 (1958); *Ker* v. *California*, 374 U. S. 23 (1963); *Gerstein* v. *Pugh*, 420 U.S. 103, 113, n. 13 (1975).

There are undoubtedly good reasons why we should, as the majority have now done, and as many other jurisdictions cited by the majority have done, recognize special protection in the Fourth Amendment against warrantless arrests in dwelling houses. But the crux of the unconstitutional intrusion here lay not in the search of the person or the area within the reach of the person but in the roving eyes of the arresting officers who entered the premises for one principal and long delayed purpose, to find and preserve the evidence.[1]    In

---

[1] In addition I note that I would, if required to do so, disagree with the result urged by the dissenting opinion with respect to the warrantless arrests. If necessary, in these cases I would hold the arrests to be invalid. Furthermore, I also disagree generally with certain other aspects of the analysis in the dissenting opinion of the search and seizure questions at issue here in that the dissenting opinion: (1) intimates that there may have been no search or seizure until the warrant was obtained — this depends on the precise question whether plain view applies; (2) concludes that the general principle that the Commonwealth has the burden of proof on warrantless searches has limited applicability to a *Chimel* search — the scope of the search must be shown; and (3) postulates that the items seized were within a *Chimel* area in the absence of proof on this question.

deference to difficult and subtly similar cases which may lie in the future, I believe that the reasoning of this court should deal with the plain view doctrine. The validity of the arrest should be left to another day and to facts which have direct relevance to the arrest.

I also think it is important to emphasize that the majority opinion, as I read it, does not have a bearing on warrantless arrests (on probable cause) where the arrest does not take place within a dwelling. As the majority opinion states, see, e.g., n. 3, it is not to be read as placing any limitations on when such an arrest is made because the "judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential." *United States* v. *Rabinowitz*, 339 U. S. 56, 65 (1950).


Quirico, J. (dissenting). I do not agree with the court that, absent an excusing exigency, the police must obtain an arrest warrant to justify their entry into a dwelling to arrest a person who they have probable cause to believe has committed or is committing a felony. Neither do I agree with the view stated in the concurring opinion of Mr. Justice Hennessey that, even if the arrest in this case was lawful, the "inadvertent" discovery requirement announced in *Coolidge* v. *New Hampshire*, 403 U. S. 443, 469-473 (1971) (Stewart, J.), renders unlawful the seizure of contraband drugs which occurred here. Therefore, I dissent.

1. It is clear that at the time of the arrests at issue here the police had probable cause to believe that the occupants of the entered apartment had committed, and perhaps that they were still committing, a felony or

felonies. See G. L. c. 94, §§ 197, 205, 213A, 217, 217B, and 217E, all in effect on January 27, 1971, the date of the arrests. This brings these cases squarely within the "old established rule of the common law, adopted and acted upon in this commonwealth," that a constable or other peace officer may lawfully arrest a person *without* a warrant whenever "he has reasonable ground to believe that the accused has been guilty of felony." *Commonwealth* v. *Carey*, 12 Cush. 246, 251-252 (1853). This has been textbook law for centuries. See 4 Stephens, New Commentaries on the Laws of England, c. 16, § 3, p. 359 (1845); 4 Blackstone, Commentaries, 292 (1807); 2 Hawkins, Pleas of the Crown, cc. 12, 13 (8th ed. 1824); 2 Hale, Pleas of the Crown, cc. 10-12 (1st Am. ed. 1847). This court has long since rejected the claim that this venerable doctrine is unconstitutional. "The authority of a constable, to arrest without warrant, in cases of felony, is most fully established by the elementary books, and adjudicated cases. . . . It has been sometimes contended, that an arrest of this character, without a warrant, was a violation of the great fundamental principles of our national and state constitutions, forbidding unreasonable searches and arrests, except by warrant founded upon a complaint made under oath. Those provisions doubtless had another and different purpose, being in restraint of general warrants to make searches, and requiring warrants to issue only upon a complaint made under oath. They do not conflict with the authority of constables or other peace-officers, or private persons under proper limitations, to arrest without warrant those who have committed felonies. The public safety, and the due apprehension of criminals, charged with heinous offences, imperiously require that such arrests should be made without warrant by officers of the law." *Rohan* v. *Sawin*, 5 Cush. 281, 284-285 (1851).

This principle of the common law, as adopted in Massachusetts and summarized above, has been, and apparently generally remains, the law throughout the

United States. A leading text states the rule simply: "If a proposed arrest is otherwise lawful, i.e., if it is supported by the requisite 'probable cause,' a warrant need not be procured before making such arrest, even though there is no reason to fear an escape in consequence of the delay in procuring the warrant." Torcia, Wharton's Criminal Procedure, § 61, p. 162 (12th ed. 1974).

The foregoing principle applies to arrests wherever they are made, on the street or in a dwelling.[1] "An officer who has the right to arrest without a warrant because he suspects on reasonable grounds that the defendant has committed a felony, has a right to break open doors. That may be taken to be settled now." *Commonwealth v. Phelps,* 209 Mass. 396, 407-408 (1911). Only four years ago we ruled that the law as stated in the *Phelps* case still appeared good. *Commonwealth v. Andrews,* 358 Mass. 721, 723-724 (1971). Despite the dictum in *Coolidge v. New Hampshire,* 403 U. S. 443, 474-481 (1971), to the effect that an arrest warrant ought to be required for an arrest in a dwelling, the Supreme Court has never made this the law. Indeed, that court has recently pointed out that the issue "remains unsettled." *Gerstein v. Pugh,* 420 U. S. 103, 113, n.13 (1975). In the *Gerstein* case the court also said: "Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, . . . it has *never* invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant" (emphasis supplied). *Id.* at 113, citing, among other cases, *Ker* v.

---

[1] At least two State Supreme Courts and several Federal trial and appellate courts have recently adopted contrary positions. These cases are cited in the opinion of the court.

*California*, 374 U. S. 23 (1963).   In the *Ker* case, on
facts in many pertinent respects similar to those in the
instant cases,[2] the court upheld as lawful an unan-
nounced, warrantless entry (by means of a key obtained
from the building manager) into the apartment of a
person whom the police had probable cause to arrest.
*Id.* at 38-41.   In fact, the only question in regard to the
legality of the arrest apparently concerning any of the
Justices in the *Ker* opinion was whether an *unannounced*
warrantless entry could be upheld.   Even the Justices
who dissented on this point seemingly would have upheld
the entry and arrest had the entry not been surreptitious.

The requirement that police authority and intention be
announced was the common law's method of balancing
society's need to have suspected felons apprehended with
the individual's interest in privacy in a dwelling.   The
rule was that "if the supposed offender fly and take
house, and the door will not be opened upon demand of
the constable and notification of his business, the consta-
ble may break open the door, tho he have no warrant
. . . for it is a proceeding for the king by persons by law
authorized, and therefore there is virtually a *non omittas*
in the actings of their authority."   2 Hale, Pleas of the
Crown, c. 11, at p. 92 (1st Am. ed. 1847).   "The
doctrine of the common law that a man's home is his
castle, which cannot be invaded for the service of process
. . . did not preclude an entry of the home for the
purpose of making a criminal arrest therein.   Accordingly,
under appropriate circumstances, an officer may force an
entry into a dwelling house for the purpose of arresting
the owner, occupant, or some other person therein."
Torcia, Wharton's Criminal Procedure, § 82 (12th ed.
1974).   While this right of forcible entry is subject to the
requirement that the officer first identify himself, state

---

[2] The scope of the search incident to arrest upheld in the *Ker* case
has been narrowed by *Chimel* v. *California*, 395 U. S. 752, 763
(1969), to the area within the arrestee's immediate control.

his purpose, and demand admittance, "[t]he announcement . . . need not be made where 'exigent circumstances' are present, such as a reasonable belief that the suspect is armed, that he may resist arrest, that he may destroy evidence, or that he may injure a victim." Torcia, op. cit., § 82.

In these cases, the arresting officers did not announce their presence and purpose and demand admittance. On the other hand, neither did they simply break down the door or sneak in; they rang the doorbell and began making arrests when the door was opened. I believe that this was a reasonable course of conduct, and therefore a constitutional course of conduct, in light of the likelihood that contraband drugs were located in the apartment and that those drugs might literally have disappeared down the drain had the residents been given notice of police presence and intentions. See *Ker* v. *California*, 374 U. S. 23 (1963), upholding an unannounced warrantless entry partly because of the officers' belief that the occupants might quickly destroy illicit drugs.

2. What I have said above is, in essence, that the police are not required to demonstrate that there were exigent circumstances before making a warrantless, but otherwise lawful, arrest in a dwelling. Even if there were such a requirement, however, I believe that it would have been satisfied in these cases. Indeed, the court today acknowledges that "the conversation [of McDonald telling two of his departing companions to warn the occupants of the apartment] which was overheard [by the police] could be said to supply exigent circumstances obviating the necessity of a warrant in that the delay in obtaining it would substantially increase the risk of loss or destruction of evidence."[3] This court, however, applies a kind of law enforcement estoppel

---

[3] Of course, it could also create or increase the risk that the occupants of the apartment, if warned, would resort to flight to avoid prosecution or prepare to resist arrest.

whereby the exigency exception to the warrant require-
ment is shut off "where the exigency is reasonably *fore-
seeable*" (emphasis added). A number of recent Federal
Circuit Court cases are cited for this proposition, with
principal reliance apparently being placed on *Niro* v.
*United States,* 388 F. 2d 535, 540 (1st Cir. 1968): "Haste
does not become necessary in the present sense if the need
for it has been brought about by deliberate and unreason-
able delay. This would allow the exception to swallow
the principle."

I believe that the "unforeseeability" reasoning is gener-
ally misplaced in the present context. Moreover, the
Supreme Court has recently rejected it in *Cardwell* v.
*Lewis,* 417 U. S. 583, 595-596 (1974), by saying in
regard to a search of an automobile: "Respondent
contends that here, unlike *Chambers* [v. *Maroney,* 399
U. S. 42 (1970)], probable cause to search the car existed
for some time prior to arrest and that, therefore, there
were no exigent circumstances. Assuming that probable
cause previously existed, we know of no case or principle
that suggests that the right to search on probable cause
and the reasonableness of seizing a car under exigent
circumstances are foreclosed if a warrant was not ob-
tained at the first practicable moment. Exigent circum-
stances with regard to vehicles are *not limited to situ-
ations where probable cause is unforeseeable* and arises
only at the time of arrest. Cf. *Chambers* [v. *Maroney,
supra*], . . . at 50-51. *The exigency may arise at any
time, and the fact that the police might have obtained a
warrant earlier does not negate the possibility of a
current situation's necessitating prompt police action*"
(emphasis added). While the law concerning searches of
automobiles has somewhat special rules because "[t]he
search of an automobile is far less intrusive on the rights
protected by the Fourth Amendment than the search of
one's person or of a building," *Almeida-Sanchez* v.
*United States,* 413 U. S. 266, 279 (1973) (Powell, J.,

concurring), it is my belief that the existence of foresee-ability as a bar to the use of the exigency excuse for not obtaining a warrant would apply, or not apply, equally to dwellings and automobiles. In other words, if the foreseeability of the exigency was of no moment in the *Cardwell* case, it is of no moment here.[4]

3. The concurring opinion of Mr. Justice Hennessey expresses the view that, even if the arrests here were valid, the seizure of the contraband was still unlawful because it was not discovered inadvertently. The purported inadvertence requirement apparently flows primarily from *Coolidge v. New Hampshire*, 403 U. S. 443, 469-473 (1971), where Mr. Justice Stewart relying on the remains of *Trupiano v. United States*, 334 U. S. 699, 704-705 (1948),[5] proposed the rule that "the discovery of evidence in plain view must be inadvertent." 403 U. S. at 469 (1971).

This portion of the *Coolidge* opinion was joined by only four Justices. We have observed before that the five opinions in the *Coolidge* case reveal "that the Justices of the United States Supreme Court were in seemingly irreconcilable disarray as to what the law was or ought to

---

[4] The question whether a police-contrived exigency would justify the absence of a warrant is obviously not present here and need not be considered except to note that it would present substantially different problems.

[5] In part of a seemingly endless series of twists and turns in this area by the Supreme Court, the *Trupiano* case was overruled by *United States v. Rabinowitz*, 339 U. S. 56 (1950), which in turn was overruled by *Chimel v. California*, 395 U. S. 752 (1969). *McDonald v. United States*, 335 U. S. 451 (1948), decided between the *Trupiano* and *Rabinowitz* cases, is in the *Trupiano* line rejected by the *Rabinowitz* decision. Contrary to the view of the Massachusetts Appeals Court (*Commonwealth v. Forde*, 2 Mass. App. Ct. 425 (1974), both the *Trupiano* and *McDonald* cases, in so far as they require a police excuse for not obtaining a search warrant to make a search incident to a lawful arrest, were squarely rejected in the *Rabinowitz* decision and have never been reinstated. *Coolidge v. New Hampshire*, 403 U. S. 443, 482 (1971).

be with reference to the warrantless search of an automobile." *Commonwealth* v. *Haefeli*, 361 Mass. 271, 278 (1972). The same point can be made of most of the other issues discussed in the *Coolidge* case, since for each of them the reader needs a chart to add up and evaluate the judicial score. To some extent, as we concluded in the *Haefeli* case, playing this "numbers game" is a fruitless exercise. *Ibid.* Nevertheless, in view of the fact that five Justices of the Supreme Court declined to indorse the imposition of an "inadvertence" limitation on the plain view doctrine, I am satisfied that we need not regard that limitation as binding.

Moreover, even if we were to adopt the inadvertence requirement, it is inapplicable here because it simply does not apply to the seizure of items in the course of a search incident to a lawful arrest. The *Coolidge* plurality opinion, in ruling that the search there was not incident to the arrest, made this point: "Finally, a word about *Trupiano* v. *United States, supra* [see n. 5 of this dissent]. Our discussion of 'plain view' in Part C above [where the inadvertence requirement was enunciated] corresponds with that given in *Trupiano.* Here, as in *Trupiano,* the determining factors are advance police knowledge of the existence and location of the evidence, police intention to seize it, and the ample opportunity for obtaining a warrant. See 334 U. S., at 707-708 and n. 27 [1948], *supra.* However, we do not 'reinstate' *Trupiano,* since we cannot adopt all its implications. To begin with, in *Chimel* v. *California,* [395 U. S. 752 (1969),] *supra,* we held that a search of the person of an arrestee and of the area under his immediate control could be carried out without a warrant. *We did not indicate there, and do not suggest here, that the police must obtain* a warrant if they anticipate that they will find specific evidence during the course of such a search" (emphasis added). 403 U. S. at 482 (1971). In the present cases it seems clear that the evidence in question, or certainly most of it, was seized either in the course of and incident to the

arrests or pursuant to a proper warrant obtained on a showing of probable cause garnered in the course of the arrests.

As indicated in the previous quotation, the Supreme Court set the currently effective limits of searches and seizures incident to arrests in *Chimel* v. *California*, 395 U. S. 752, 763 (1969), where it said, "There is ample justification . . . for a search of the arrestee's person and the area 'within his immediate control' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." The *Chimel* opinion accordingly invalidated the extensive search involved in that case — a search which had ranged "through the entire three-bedroom house, including the attic, the garage, and a small workshop." *Id.* at 754. In the course of its opinion, the court refused "to draw a line" between the case then before it and two earlier cases, *Harris* v. *United States*, 331 U. S. 145 (1947), and *United States* v. *Rabinowitz*, 339 U. S. 56 (1950). The *Chimel* decision therefore concluded by overruling these two prior decisions. 395 U. S. at 766, 768 (1969). The now invalid search in the *Harris* case had been a thorough one, of the entire apartment. The particular seizure which would be impermissible today, according to the *Chimel* decision, involved a sealed envelope, found inside a closed desk drawer, marked "George Harris, personal papers." The envelope contained altered Selective Service documents which led to Harris's conviction. 331 U. S. at 149 (1947). The search and seizure involved in the *Rabinowitz* case, now also invalid under the *Chimel*

limitations, was a virtual ransacking of a one-room office. The officers "searched the desk, safe, and file cabinets in the office for about an hour and a half," 339 U. S. at 59 (1950), and found and seized 573 stamps with forged overprints which were admitted in evidence at Rabinowitz's trial. Absent some unusual circumstances, therefore, searches and seizures cannot be justified as incident to arrests if they take place either (1) in rooms other than the one or ones in which the arrests occurred, or (2) in closed or concealed areas in the room or rooms where the arrests occurred. These guidelines must be applied to the present cases, bearing in mind that there is "an affirmative authority to search," which is more than a mere exception to the warrant requirement. *United States* v. *Robinson*, 414 U. S. 218, 226 (1973).

At the time of the arrests, five or six police officers entered the four-room (five counting a hall) apartment to find nine suspects in various locations, with apparently five persons in the living room, three in the kitchen, and one in the back bedroom where he had fled when the police entered. In these circumstances, that is, in a small apartment (as shown by photographs) in which the police are outnumbered by the suspect occupants and in which at least one suspect is running through the apartment in attempted flight, it may well be that every corner of the apartment was potentially within the control of the suspects in terms of the danger that weapons or evidence might be grabbed. We need not go so far, however, to decide these cases.

Here, contemporaneously with the arrests, the officers, in a mere *two to three minute* time span, observed large amounts of contraband drugs and related paraphernalia in open view. None of these items was physically removed. Rather, they were promptly reduced to police control by the placing of officers in position to prevent any of the suspects from touching or acquiring any of the contraband. Assuming that these "reductions to

control" amounted to seizures,[6] I believe that at least several of them occurred well within the area in which the *Chimel* case permits such seizures.

---

[6] Since the observing of items in plain view is not a true search in Fourth Amendment terms, *Cardwell* v. *Lewis*, 417 U. S. 583, 590-591 (1974); McCormick, Evidence, §§ 169, 171 (2d ed. 1972), and cases there cited, there was no search in these cases until after a warrant was obtained. The Fourth Amendment, however, applies to seizures as well as to searches, although the incremental invasion of privacy may be minimal when contraband already viewed by police is seized by them. See *Coolidge* v. *New Hampshire*, 403 U. S. 443, 467 (1971) (Stewart, J.). In the ordinary case, therefore, a warrantless seizure, even absent a search, would probably have to be justified by the prosecution at a suppression hearing. Cf. *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). However, the police right to search and seize incident to a lawful arrest is, in a sense, absolute. That is, once a lawful custodial arrest is shown, a search or *seizure incident* to that arrest is automatically authorized regardless of the fact that the particular arrest situation may have involved no danger of violence or destruction of evidence. I believe this was made clear in *United States* v. *Robinson*, 414 U. S. 218, 235 (1973), where the court said: "[O]ur . . . fundamental disagreement with the Court of Appeals arises from its suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest. We do not think the long line of authorities of this Court . . . requires such a case-by-case adjudication. A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found . . . .. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."
While the Commonwealth generally has the burden of establishing the lawfulness of a warrantless search, *Commonwealth* v. *Antobenedetto, supra*, this principle is of limited applicability to searches, or seizures, incident to a lawful arrest since, as the *Robinson* case indicates, an appropriately limited search incident to arrest is legitimate per se. To the extent that the Commonwealth does have such a burden in this context, perhaps, for example, in relation to the scope

It would seem clear, for example, that the drugs and related apparatus located in plain view on the "Hi-fi set" and on the table in the living room, where three or four officers were attempting to arrest six suspects, one of whom was attempting to flee, were properly subject to seizure and were therefore properly reduced to police control although not removed until a search warrant had been obtained and the entire apartment searched. Similarly, the drugs reduced to police control on the floor of the kitchen, where other officers were arresting three additional suspects, were also subject to seizure incident to the arrests. See *Commonwealth* v. *Cohen,* 359 Mass. 140, 145 (1971). The reduction of the drugs in the boiler room to police control might not be justifiable as incident to the arrests, although that room was adjacent to the bedroom into which the fleeing suspect had run. However, the items located in open view in the rooms where the arrests took place were lawfully seizable, and therefore the items in plain view in those rooms which were listed in the affidavit in support of the search warrant application properly served as a basis for the granting of that warrant, the execution of which revealed further large amounts of contraband. In short, the great bulk of evidence leading to the defendant's convictions was properly seized. The fact that some evidence reduced to police control prior to the obtaining of the warrant may not have been subject to seizure at that time would not, in this situation, constitute reversible error. *Harrington* v. *California,* 395 U. S. 250, 254 (1969). *Subilosky* v. *Commonwealth,* 358 Mass. 390, 397 (1970). The entire record in these cases, as well as the many pounds of illicit drugs, the hypodermic syringes, and the

---

of the search-seizure area, that burden was satisfied in these cases by the evidence at the suppression hearing summarized above. Of course, the fact that the police merely posted a guard and obtained a warrant before physically removing the evidence is of no particular significance. *Chambers* v. *Maroney,* 399 U. S. 42, 52 (1970). *Cardwell* v. *Lewis,* 417 U. S. 583, 594-595 (1974).

related equipment seized in the apartment, demonstrates that the defendant was part of a large drug supplying ring.

4. It seems to me that both the opinion of the court and the concurring opinion find most of the available United States Supreme Court support for the views they express in *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971). I believe that reliance on those portions of the *Coolidge* decision discussing warrantless arrests and the plain view doctrine is questionable in any case because the discussion of arrests was dictum and the discussion of plain view could not command a majority of the court. However, because the court and the concurring opinion do not accept this proposition, we must turn to another question. Since the arrests and seizures in the present cases were clearly valid under pre-*Coolidge* law, *Commonwealth* v. *Andrews,* 358 Mass. 721, 724 (1971), we must decide whether the "new" or the "old" law should be applied to them. This calls for an examination of the pertinent chronology and an application of concepts applicable to determining the retroactive effect of new constitutional doctrine.

The arrests and seizures in these cases occurred on January 27 and 28, 1971. The *Coolidge* case was decided on June 21, 1971, almost five months later. Generally, new Fourth Amendment doctrine is not given retroactive effect for various reasons, including that it "raises no question about the guilt of defendants." *Williams* v. *United States,* 401 U. S. 646, 653, 661-662 (1971) (holding that *Chimel* v. *California,* 395 U. S. 752 [1969], does not apply to searches prior to the decision in that case). See *Desist* v. *United States,* 394 U. S. 244, 254 (1969) (holding that *Katz* v. *United States,* 389 U. S. 347 [1967], does not apply to electronic surveillance conducted prior to the decision in that case). I believe that the *Coolidge* decision should have no bearing on the lawfulness of arrests and seizures which, as in these cases, occurred prior to the date of that decision. Since the

holding in that case should not be applied retroactively, dictum therein should, a fortiori, not be applied retroactively.

In *Stovall* v. *Denno*, 388 U. S. 293, 297 (1967), the criteria for determining whether to give new constitutional rules retroactive effect were said to include "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." As to (a), the purpose of excluding unlawfully seized evidence is primarily to deter police invasions of protected zones of privacy. See the discussion in *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U. S. 388, 411-427 (1971) (Burger, C.J., dissenting). Such exclusion does not aid, indeed it impedes, the accuracy of the fact-finding processes by withholding otherwise probative evidence from the trier of fact. See *ibid.*; *Williams* v. *United States, supra*, at 653. By giving retroactive effect to the *Coolidge* decision we cannot repair any past invasions of privacy, and we will not prevent any future invasions of privacy over and above those which would be prevented by prospective application of the decision. As to (b), the extent of law enforcement reliance on old standards, I believe that the *Coolidge* decision was not reasonably foreseeable; in fact it is a difficult decision to understand in hindsight. In view of the fact that the preexisting standards had been in force for centuries, police reliance on those old standards cannot be disputed. As to (c), the effect on the administration of justice, it has already been indicated that the accuracy of the fact-finding process will be lessened by the retroactive application of the new rule as a trade-off cost in the hope of purchasing improved future protection for privacy rights. Altogether, I believe the arguments against giving retroactive effect to any facet of the

*Coolidge* case are overwhelming.[7]   Without withdrawing from my opposition to the basic conclusions of the opinion of the court and of the concurring opinion, therefore, I note that even if I accepted those conclusions I would not apply them to these cases.

5. In summary, I believe that heretofore the law of arrests, and of searches and seizures incident thereto, has long followed a consistent and proper course in this Commonwealth.   Until today the law in this regard has been that a police officer with probable cause to believe a person had committed or was committing a felony could arrest that person, with or without a warrant, wherever he could be found, and could conduct a search incident to that arrest.   The law of searches for and seizures of objects when not made incident to an arrest has followed a completely different course, zigzagging from rule to rule, convoluted by exceptions and varying presumptions and burdens of proof.   When the trial of the suspected felon ends at the door of a dwelling, the opinion of the

---

[7] An exception to general principles of retroactivity exists, of course, for the particular case in which the new doctrine is announced. Thus, for example, although the *Chimel* rule is not applicable to searches or seizures which occurred before *Chimel* was decided, that rule was used to invalidate the search in *Chimel* itself.   To the extent that the present cases rest on Federal constitutional grounds, then it might be said to be "the particular case" in which the new Fourth Amendment doctrine is announced.   If so, I believe some serious questions are raised concerning whether this court can properly take such a step.

In *Oregon* v. *Hass*, 420 U. S. 714, 719 (1975), the Supreme Court made clear that although a State court may, as matter of State law, impose greater restrictions on police activity than those the Supreme Court holds mandated by the Federal Constitution, "of course, a State may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them."   When it is recalled that in *Ker* v. *California*, 374 U. S. 23 (1963), the court upheld a warrantless entry into an apartment for purposes of making an arrest, the just quoted rule from the *Hass* case certainly suggests that this court may not be free to invalidate such an entry on Fourth Amendment grounds.

court and the concurring opinion would abandon our clear rules concerning arrests and substitute in large part the opaque, ever changing rules concerning nonarrest-connected searches for and seizures of objects. I would not make that substitution.